IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-51

No. 243A20

Filed 23 April 2021

IN THE MATTER OF: M.L.B.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 18 March 2020 by Judge William J. Moore in District Court, Robeson County. This matter was calendared for argument in the Supreme Court on 19 March 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*J. Edward Yeager Jr. for petitioner-appellee Robeson County Department of Social Services.*

*Matthew D. Wunsche for appellee Guardian ad Litem.*

*Wendy C. Sotolongo, Parent Defender, by Jacky Brammer, Assistant Parent Defender, for respondent-appellant father.*

*Robert W. Ewing for respondent-appellant mother.*

BARRINGER, Justice.

¶ 1      Respondents appeal from the trial court's order terminating their parental rights to M.L.B. (Mary).[1] After careful review, we reverse the termination-of-

---

[1] The pseudonym "Mary" is used throughout this opinion to protect the identity of the juvenile and for ease of reading.

parental-rights order and remand to the trial court for further proceedings not inconsistent with this opinion.

## I. Background

The involvement of Robeson County Department of Social Services (DSS) with respondents and Mary commenced in February 2014. DSS had received information concerning respondents' substance abuse and ongoing domestic violence in respondents' home. As these issues continued, Mary was placed in kinship care in May 2014. DSS filed a petition alleging that Mary was a neglected juvenile on 10 December 2014. An order granting nonsecure custody to DSS was entered on 10 December 2014. On 28 April 2015, the trial court entered an order adjudicating Mary a neglected juvenile.

In April 2019, the trial court changed the permanent plan to adoption with a concurrent plan of guardianship. DSS filed a termination-of-parental-rights petition on 28 May 2019. DSS alleged that grounds existed to terminate respondents' parental rights pursuant to neglect, failure to make reasonable progress in correcting the conditions which led to removal, failure to pay a reasonable portion of the cost of care, and dependency. *See* N.C.G.S. § 7B-1111(a)(1)–(3), (6) (2019). DSS alleged as an additional ground that the parental rights of respondent-mother with respect to her other children had been terminated involuntarily by a court of competent jurisdiction

and she lacked the ability or willingness to establish a safe home. *See* N.C.G.S. § 7B-1111(a)(9).

¶ 4     The trial court held the termination-of-parental-rights hearing on 12 February 2020. At the hearing on termination of parental rights, the transcript reflects that DSS's counsel called as DSS's first witness the social worker for Mary's case from January 2019 until April 2019. During the testimony of this social worker, the transcript reflects the colloquy between DSS's counsel, the social worker, respondent-mother's counsel, and the trial court regarding a document entitled Termination of Parental Rights Timeline (Timeline):

> [DSS'S COUNSEL]: Have you, along with [another] social worker, . . . prepared an exhibit for the [c]ourt today?
> [SOCIAL WORKER]: I did.
> [DSS'S COUNSEL]: Is it true and accurate, to the best of your ability?
> [SOCIAL WORKER]: It is.
> [DSS'S COUNSEL]: Does it outline [DSS's] efforts with regard to the minor child [Mary]?
> [SOCIAL WORKER]: It does.
> [DSS'S COUNSEL]: Your Honor, we'd ask the [c]ourt to accept this witness as a —
> [RESPONDENT-MOTHER'S COUNSEL]: I'm going to object for the record, Your Honor.
> THE COURT: (Inaudible)

¶ 5    DSS called three additional witnesses, a domestic violence case worker at a healthcare facility that worked with respondent-mother from 14 November 2019 to 5 December 2019, a substance abuse counselor at a healthcare facility that oversaw a program respondent-mother commenced on 6 February 2019, and a social worker working on Mary's case since April or May 2019. The transcript does not reflect the admission of any evidence by DSS other than the testimony of the aforesaid three witnesses during the adjudicatory phase of the termination-of-parental-rights hearing.

¶ 6    On 18 March 2020, the trial court entered an order in which it determined that each ground alleged in the 28 May 2019 petition existed to terminate respondents' parental rights and concluded it was in Mary's best interests to do so. Respondents appealed.

## II.    Timeline

¶ 7    Both respondent-mother and respondent-father argue that the trial court's reliance on the Timeline referenced during the termination-of-parental-rights hearing was an error. The trial court in the termination-of-parental-rights order stated in paragraph 40 that "[t]he [c]ourt relies on and accepts into evidence the Timeline, in making these findings and finds the said report to [be] both credible and

reliable."[2] Respondents both contend that the trial court's pervasive reliance on the Timeline is reflected in the findings of fact and conclusions of law in the termination-of-parental-rights order, rendering the termination-of-parental-rights order tainted and unreviewable. DSS argues that a trial court is presumed to disregard incompetent evidence in a bench trial and that there is competent evidence besides the Timeline to support the termination-of-parental-rights order.

¶ 8     DSS has neither argued that the Timeline was admissible evidence nor that respondents waived their objection to the Timeline's admissibility. Therefore, we do not address whether the Timeline was inadmissible hearsay. Instead, we presume the Timeline was inadmissible and not properly considered by the trial court. Thus, we next consider whether other evidence admitted during the termination-of-parental-rights hearing provides the bases for the trial court's findings of fact. "If either of the . . . grounds [for termination of parental rights found by the trial court are] supported by findings of fact based on clear, cogent and convincing evidence, the order appealed from should be affirmed." *In re Moore*, 306 N.C. 394, 404 (1982). When a judge sits without a jury, this Court presumes that the trial court disregards any incompetent evidence and will affirm the judgment or order if the trial court's

---

[2] As summarized in the background section of this opinion, the transcript does not establish that the Timeline was admitted into evidence during the termination-of-parental-rights hearing.

findings are supported by competent evidence. *Munchak Corp. v. Caldwell*, 301 N.C. 689, 694 (1981).

¶ 9          DSS argues that there was overwhelming, unrebutted evidence to support the termination of parental rights, reciting the testimony of the witnesses DSS tendered at the termination-of-parental-rights hearing. However, after a thorough review of the testimony presented at the termination-of-parental-rights hearing, we cannot conclude that the testimony alone provides clear, cogent, and convincing evidence supporting the challenged findings of fact of the trial court necessary to support its conclusions of law for any ground for termination. *See In re Moore*, 306 N.C. at 404. DSS's first witness, a social worker, testified that Mary had been in DSS care and custody since 11 December 2014. There was also testimony regarding the case plans signed by respondents, respondents' compliance with the case plans, and their progress on the conditions that led to Mary's removal from their home, among other things.

¶ 10          Yet, as highlighted by respondents in their briefs, the challenged findings of fact include a substantial amount of information that cannot be discerned from the testimony presented at the termination-of-parental-rights hearing. This information is in the Timeline. For purposes of this appeal, however, the Timeline is inadmissible incompetent evidence on which the trial court should not have relied. Therefore, the order terminating respondents' parental rights must be reversed; the testimony at

the termination-of-parental-rights hearing does not provide clear, cogent, and convincing evidence supporting the challenged findings of fact of the trial court necessary to support the trial court's conclusions of law for any ground for termination.

### III.    Indian Child Welfare Act Proceedings

Respondent-father argues that the trial court failed to comply with the Indian Child Welfare Act (ICWA) and asks this Court to vacate and remand for compliance with the ICWA. DSS concedes the record is silent as to whether the trial court considered the impact of the ICWA on this case and that the matter should be remanded to the trial court as a result. The guardian ad litem agrees that the matter should be remanded for the trial court to comply with the ICWA. We agree that the record does not reflect compliance with the ICWA, and thus we instruct the trial court on remand to comply with the ICWA.

In 2016, the United States Department of the Interior promulgated regulations to promote the uniform application of the ICWA codified at subpart I of 25 C.F.R. pt. 23. Indian Child Welfare Act Proceedings, 25 C.F.R. §§ 23.101–.144 (2019); Indian Child Welfare Act Proceedings; Final Rule, 81 Fed. Reg. 38,777, 38,782 (June 14, 2016) (to be codified at 25 C.F.R. pt. 23); *see also In re E.J.B.*, 375 N.C. 95, 101 (2020).

The provisions under subpart I do not affect proceedings initiated prior to 12 December 2016, but the provisions "apply to any subsequent proceeding in the

same matter or subsequent proceedings affecting the custody or placement of the same child." 25 C.F.R. § 23.143. A child custody proceeding includes "any action resulting in the termination of the parent-child relationship." 25 U.S.C. § 1903(1)(ii).

¶ 14     Pursuant to 25 C.F.R. § 23.107(a),

> [s]tate courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record. State courts must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.

25 C.F.R. § 23.107(a).

¶ 15     As defined in 25 U.S.C. § 1903(4), " 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). " 'Indian tribe' means any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary because of their status as Indians, including any Alaska Native village as defined in section 1602(c) of title 43." 25 U.S.C. § 1903(8); *see* Indian Entities Recognized by and Eligible to Receive Services from the United States Bureau of Indian Affairs, 86 Fed. Reg. 7,554, 7,554 (Jan. 29, 2021).

¶ 16     "The inquiry into whether a child is an 'Indian child' under ICWA is focused on only two circumstances: (1) Whether the child is a citizen of a Tribe; or (2) whether

the child's parent is a citizen of the Tribe and the child is also eligible for citizenship." Indian Child Welfare Act Proceedings; Final Rule, 81 Fed. Reg. at 38,804. The inquiry "is not based on the race of the child, but rather indications that the child and her parent(s) may have a political affiliation with a Tribe [as defined in 25 U.S.C. § 1903]." Indian Child Welfare Act Proceedings; Final Rule, 81 Fed. Reg. at 38,806; *see also* Indian Child Welfare Act Proceedings; Final Rule, 81 Fed. Reg. at 38,801 (" 'Indian child' is defined based on the child's political affiliation with a federally recognized Indian Tribe.").

¶ 17     Paragraph (c) of 25 C.F.R. § 23.107 states:

> (c) A court, upon conducting the inquiry required in paragraph (a) of this section, has reason to know that a child involved in an emergency or child-custody proceeding is an Indian child if:
> (1) Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that the child is an Indian child;
> (2) Any participant in the proceeding, officer of the court involved in the proceeding, Indian Tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child;
> (3) The child who is the subject of the proceeding gives the court reason to know he or she is an Indian child;
> (4) The court is informed that the domicile or residence of the child, the child's parent, or the child's Indian custodian is on a reservation or in an Alaska Native village;
> (5) The court is informed that the child is or has been a ward of a Tribal court; or

(6) The court is informed that either parent or the child possesses an identification card indicating membership in an Indian Tribe.

25 C.F.R. § 23.107(c).

As the termination-of-parental-rights hearing occurred after 12 December 2016 and the trial court did not ask the participants on the record whether the participants knew or had reason to know that Mary is an Indian child, the trial court did not comply with 25 C.F.R. § 23.107(a). Since the trial court did not comply with 25 C.F.R. § 23.107(a), the trial court could not comply with 25 C.F.R. § 23.107(c) and could not determine whether it had reason to know Mary is an Indian child. *See* 25 C.F.R. § 23.107(c) ("A court, *upon conducting the inquiry required in paragraph (a) of this section*, has reason to know that a child involved in an emergency or child-custody proceeding is an Indian child if . . . .").

Therefore, on remand, the trial court "must ask each participant in [the termination-of-parental-rights proceeding] whether the participant knows or has reason to know that the child is an Indian child" on the record and receive the participants' responses on the record. 25 C.F.R. § 23.107(a). The trial court "must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." *Id.* This should be done promptly upon remand before holding a new termination-of-parental-rights hearing. If there is reason to know that Mary is an Indian child, the trial court must comply

with 25 C.F.R. § 23.107(b), and DSS, as the party seeking termination of parental rights, must comply with 25 U.S.C. § 1912(a) and 25 C.F.R. § 23.111(d). *See In re E.J.B.*, 375 N.C. at 104–05 (discussing notice requirements under 25 U.S.C. § 1912 and 25 C.F.R. § 23.111(d)).[3]

## IV.    Conclusion

For the reasons set forth in this opinion, we reverse the termination-of-parental-rights order and remand this case to the trial court to conduct a new hearing on termination of respondents' parental rights and to comply with the requirements of ICWA. Given our disposition of this appeal, we decline to address respondents' remaining arguments on appeal.

REVERSED AND REMANDED.

---

[3] All participants should become familiar with the Indian Child Welfare Act of 1978, codified at 25 U.S.C. ch. 21, and the corresponding regulations, including but not limited to the regulations codified at 25 C.F.R. §§ 23.101–.144, to ensure compliance with the ICWA and to assert objections on the record if compliance in a proceeding has not occurred.